UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATRINA M.,

               Plaintiff,

         v.                                                     **DECISION AND ORDER**
                                                                19-CV-6777S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

      1.     Plaintiff Katrina M.[1] challenges the determination of the Appeals Council that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since June 15, 2013, due to a variety of physical ailments, including inflammatory polyarthritis (arthritis in multiple joints) and sacroiliitis (inflammation of sacroiliac joints in lower spine and pelvis).  Plaintiff maintains that she is entitled to disability benefits because her impairments render her unable to work.

      2.     Plaintiff initially filed her application for disability benefits on May 25, 2015. After denial at the agency level, Plaintiff proceeded to a hearing before an administrative law judge ("ALJ"), which took place via videoconference before ALJ John R. Ramos on February 27, 2018.  At the time of the hearing, Plaintiff was 35 years old and had a high school education.  The ALJ considered the case *de novo* and, on May 11, 2018, issued a written decision denying Plaintiff's application for benefits.  The Appeals Council thereafter granted review, but ultimately denied Plaintiff's application on August 20, 2019.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

3.      Plaintiff filed the current action on October 21, 2019, challenging the Commissioner's final decision.[2]  After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on August 6, 2020.  (Docket Nos. 5, 12, 14, 15.)  The Clerk of Court thereafter assigned the case on October 6, 2020, at which time this Court took the motions under advisement without oral argument.  (Docket No. 16.)  For the following reasons, Plaintiff's motion will be denied and Defendant's motion will be granted.

4.      A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted).  In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405 (g).

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405 (g); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence.  See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does

---

[2] The Appeals Council's August 20, 2019 decision, which incorporates portions of the ALJ's May 11, 2018 decision, is the Commissioner's final decision under review.

it determine whether the Commissioner's conclusions were supported by substantial evidence.").  In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6.      As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted).  This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7.      As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d

842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).   Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 405 (g), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.   See Zacharopoulos v. Saul, CV 19-5075 (GRB), 2021 WL 235630, at *7 (E.D.N.Y. Jan. 25, 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports the ALJ's decision'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).   This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8.     "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."   Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   Similarly, where evidence is deemed susceptible to

more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'"  Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.    The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.    First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12.    In this case, the Appeals Council, relying largely on the ALJ, found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 15, 2013, the alleged onset date (R. at 5[3]); (2) Plaintiff's inflammatory polyarthritis and sacroiliitis are severe impairments within the meaning of the Act (R. at 5); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 5); (4) Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (R. at 5); (5) Plaintiff is unable to perform her past relevant work (R. at 6); and (6) Plaintiff is not disabled based on direct application of Rule 201.28, Table No. 2 of 20 C.F.R Part 404, Subpart P, Appendix 2, given her age, education, work experience, and residual functional capacity (R. at 6).  Accordingly, the Appeals Council determined that Plaintiff

---

[3] Citations to the underlying administrative record are designated as "R."

was not under a disability as defined by the Act from June 15, 2013, through May 11, 2018, the date of the ALJ's decision.  (R. at 6.)

13.    Plaintiff challenges the ALJ's consideration of the consultative and expert medical opinions.[4]  First, she contends that the ALJ impermissibly "cherry picked" from among them.  Second, she argues that the ALJ failed to properly weigh the opinions under the governing standards.   In response, Defendant maintains that the ALJ properly considered, and explained his consideration of, the medical opinion evidence.  Having examined the administrative record in its entirety, this Court finds that Plaintiff's arguments lack merit.

14.    Turning to Plaintiff's first argument, she maintains that the ALJ impermissibly "cherry picked" from the consultative opinions rendered by Drs. Oh and Kinney, and the expert medical opinion rendered by Dr. Chandrasekhar.[5]  "Cherry picking" in this context refers to an ALJ picking and choosing within a single medical opinion, crediting the portions that support the ALJ's findings and ignoring the portions that do not.  See Dowling v. Comm'r of Soc. Sec., No. 5:19-CV-1558 (DJS), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015) (describing cherry picking as "improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.")  Such a practice "suggests a serious misreading of evidence, or failure to comply with the requirement that all evidence be taken into account, or both."  Id. at *11 (citing Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010)).

---

[4] Because the Appeals Council adopted the ALJ's substantive decision, this Court refers to the ALJ's findings, as do the parties in their briefing.  (R. at 4 ("The Appeals Council adopts the Administrative Law Judge's findings or conclusions regarding whether the claimant is disabled.").)

[5] None of these doctors were Plaintiff's treating physician.

15.     But the mere failure to mention portions of a medical opinion is not cherry picking: ALJs are not required to mention or address every piece of evidence presented, so long as the reviewing court can glean the rationale of the decision.  See Monguer v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).  Nor do ALJs impermissibly "cherry pick" when they accept only a portion of a medical opinion, particularly when they explain their reasons for doing so.  See Dowling, 2015 WL 5512408, at 11 (noting that an ALJ "must have a sound reason for weighting portions of the same-source opinions differently").

16.     Here, the ALJ examined the consultative opinions from Drs. Oh and Kinney, and the expert medical opinion from Dr. Chandrasekhar, and adequately explained his consideration of them.  (R. at 102.)  He credited their findings that Plaintiff could perform *at least* sedentary exertional tasks because those findings were consistent with clinical records, Plaintiff's positive response to treatment, and Plaintiff's testimony concerning her daily activities.  (R. at 102.)  The ALJ explained that he would have weighed the opinions even more heavily, but portions of them were inconsistent with the record as a whole.  (R. at 102.)  For example, the ALJ found, *in Plaintiff's favor*, that Dr. Chandrasekhar's opinion that she could lift up to 50 lbs., and all three doctors' opinions that she could stand or walk for more than two hours per day, were inconsistent with her testimony concerning her pain and fatigue.  (R. at 102.)  The ALJ also explained that he gave little weight to Dr. Chandrasekhar's opinion that Plaintiff could sit for only less than six hours per day and had other non-exertional limitations because it was inconsistent with Plaintiff's benign examination findings and her admitted daily activities, which included caring for her two young children and cleaning her church on a part-time basis.  (R. at 102-103.)  While Plaintiff may disagree with the ALJ's evaluation of these opinions (discussed further

below), the record reflects that the ALJ considered each opinion and sufficiently explained his reasons for rejecting those portions that he did not accept.  There is thus no demonstration of impermissible "cherry picking."

17.    Turning to Plaintiff's second argument, she maintains that the ALJ failed to properly weigh Dr. Chandrasekhar's medical opinion in accordance with the governing regulatory factors.[6]  For claims filed before March 27, 2017, such as this one, the Commissioner evaluates medical opinion evidence under the framework set forth in 20 C.F.R. § 404.1527.[7]   Under that framework, the Commissioner is required to evaluate and consider every medical opinion submitted, together with the rest of the relevant evidence.  See 20 C.F.R. §§ 404.1527 (b) and (c).  To determine what weight to afford a medical opinion, the Commissioner considers the following factors:

> (1) whether the medical source has examined the claimant (with more weight afforded to the opinion of a source who has);
>
> (2) whether the medical source has a treatment relationship with the claimant (with more, if not controlling, weight afforded to the opinion of a treating source);[8]
>
> (3) whether the medical source's opinion is supported (with more weight afforded to well explained opinions supported by diagnostic findings and other relevant evidence);
>
> (4) whether the medical source's opinion is consistent with the record as a whole (with more weight afforded to opinions that are);

---

[6] Plaintiff maintains in her brief that the ALJ failed to properly consider each of the three medical opinions, but she develops arguments only as it pertains to Dr. Chandrasekhar's opinion.  (Plaintiff's Memorandum, Docket No. 12-1, p. 10.)

[7] For claims filed on or after March 27, 2017, the Commissioner evaluates medical evidence under 20 C.F.R. § 404.1520c.

[8] This subsection contains what is commonly known as the treating-physician rule, which is not implicated here since none of the medical opinions are from Plaintiff's treating physicians.

(5) whether the medical source is a specialist (with more weight afforded to the opinion of a specialist in the relevant field than to the opinion of a non-specialist); and

(6) whether there are other relevant factors informing the medical source's opinion (with more weight afforded to medical sources who understand the social security disability process and its evidentiary requirements or who are familiar with the other information in the claimant's case record).

See 20 C.F.R. § 404.1527 (c)(1)-(6); Smith v. Comm'r of Soc. Sec., 351 F. Supp. 3d 270, 279 (W.D.N.Y. 2018).

18.    After considering these factors, the Commissioner must adequately explain the weight afforded to the medical opinion and cannot simply rely on conclusory statements, such as that the opinion "is not supported by the evidence."  Drake v. Saul, No. 20-204-cv, 2020 WL 7294561, at *1 (2d Cir. Dec. 11, 2020) (finding an ALJ's assignment of no weight to a medical opinion because "it is not supported by the evidence" to be "inadequate" without any explanation for why the opinion was unsupported or any discussion of the regulatory factors); see also Falbru v. Berryhill, No. 6:17-CV-6314 (MAT), 2018 WL 1553965, at *2 (W.D.N.Y. Mar. 30, 2018) ("Remand is appropriate where an ALJ fails to consider these factors and to adequately explain the weight given to the consultative examiner's opinion."); Hatcher v. Astrue, 802 F. Supp. 2d 472, 476 (W.D.N.Y. 2011) ("The ALJ must then articulate his reasons for assigning the weight that he does to both treating and nontreating physicians' opinions.").  As with other important findings, the Commissioner must explain the weight afforded medical opinions "with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."  Ferraris, 728 F.2d at 587.

19.    Dr. Chandraskekhar completed an expert medical evaluation at the ALJ's request on April 8, 2018.  (R. at 800, 814.)  After reviewing Plaintiff's medical records, Dr. Chandraskekhar determined that Plaintiff could sit, stand, and walk uninterrupted for four hours; could sit, stand, and walk for a total of five hours in an 8-hour day; and could ambulate without the assistance of a cane.  (R. at 815.)  He opined that Plaintiff could push or pull with both hands frequently, and could reach, handle, finger, and feel with both hands continuously.  (R. at 816.)  He further determined that Plaintiff could operate foot controls with both feet frequently.  (R. at 816.)

20.    As to postural activities, Dr. Chandraskekhar found that Plaintiff could frequently climb stairs, ramps, ladders, and scaffolds; balance; stoop; kneel; crouch; and crawl.  (R. at 817.)  And while determining that Plaintiff could never tolerate exposure to unprotected heights, Dr. Chandraskekhar found that she could frequently tolerate humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold and heat; and vibrations.  (R. at 818.)

21.    Finally, Dr. Chandraskekhar opined that Plaintiff could never lift or carry 51-100 lbs., could frequently lift or carry 21-50 lbs., and could continuously lift or carry up to 20 lbs.  (R. at 819.)  And he found no physical impairments that would prevent Plaintiff from engaging in activities such as shopping, traveling alone, ambulating, walking at a reasonable on rough or uneven surfaces, using public transportation, climbing steps, preparing and eating simple meals alone, attending to personal hygiene, and sorting or handling files.  (R. at 819.)

22.    In evaluating Dr. Chandraskekhar's report, the ALJ gave "some weight" to his opinion that Plaintiff could perform at least sedentary exertional tasks, since that

opinion was consistent with Plaintiff's testimony, clinical findings, responses to treatment, and reported activities of daily living.  (R. at 102.)  Sedentary work involves lifting no more than 10 lbs. at a time, occasionally lifting or carrying things like files or small tools, and sitting most of the time, with walking and standing required as necessary to complete job duties.  20 C.F.R. § 404.1567 (b).  The ALJ further explained that he would have given Dr. Chandraskekhar's overall opinion greater weight, but he found his determinations that Plaintiff could lift up to 50 lbs. and could stand and walk for more than two hours per day inconsistent with her testimony concerning pain and fatigue.  (R. at 102.)  These were determinations in Plaintiff's favor.

23.     Plaintiff takes issue with the ALJ's rejection of Dr. Chandraskekhar's opinion that she could sit for only four hours without interruption and could sit for no more than 5 hours in an 8-hour day, which Plaintiff maintains would preclude sedentary work.  (R. at 815.)  Plaintiff maintains that the ALJ did not adequately explain his reasons for rejecting this portion of Dr. Chandraskekhar's report.  This Court disagrees.

24.     The ALJ evaluated Dr. Chandraskekhar's opinion along with the other medical evidence in the record.  (R. at 102-103.)  On the point at issue, the ALJ explained that Dr. Chandraskekhar's opinion was inconsistent with Plaintiff's medical records and testimony concerning her activities of daily living.  (R. at 102-103.)  In particular, the ALJ explained that the record contained no evidence of Plaintiff having a demonstrated difficulty sitting.  (R. at 103.)  He further explained that Dr. Chandraskekhar's opinion was inconsistent with Plaintiff's daily activities, including caring for her children and cleaning her church.  (R. at 103.)  These are permissible reasons for the ALJ to reject Dr. Chandraskekhar's opinion at issue, and the ALJ adequately explained them.

25.     Indeed, Plaintiff points to no evidence in the record demonstrating a sitting limitation.  Rather, Drs. Oh and Kinney both found that Plaintiff could sit for more than six hours in an 8-hour workday.  (R. at 58, 76.)  And the evidence of Plaintiff's daily activities also supports the ALJ's determination.  As the ALJ explained, Plaintiff worked for her church on a part-time basis since her onset date.  (R. at 99.)  Along with performing secretarial tasks and greeting parishioners, she wiped down counters and swept floors. (R. at 99.)  Plaintiff's other significant activities of daily living included caring for her two young children, performing household tasks, attending appointments, attending Masters-level college classes, and completing a regularly-released church newsletter.  (R. at 100.) Evidence in the record further indicates that Plaintiff did tai chi and yoga.  (R. at 102.) This substantial evidence supports the ALJ's conclusion, and again, this Court finds no reversible error in the ALJ's explanation of his decision.

26.     Accordingly, having reviewed the Appeals Council's (and the ALJ's) decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27.  Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        February 11, 2020
              Buffalo, New York

                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge